[Civ. No. 7617. Fifth Dist. May 2, 1984.]

TOYOTA OF VISALIA, INC., et al., Plaintiffs and Appellants, v. DEPARTMENT OF MOTOR VEHICLES et al., Defendants and Appellants.

**[Opinion certified for partial publication.[1]]**

---

[1]Part III of ISSUES RAISED BY THE BOARD AND THE DEPARTMENT and parts I, III, IV and V of ISSUES RAISED BY TOYOTA AND PIONEER are not published, as they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

318

### Counsel

Coder & Tuel and Houston N. Tuel, Jr., for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Susan P. Underwood, Deputy Attorney General, for Defendants and Appellants.

### Opinion

**ZENOVICH, J.**—This case is before us on an appeal by the Department of Motor Vehicles and the New Motor Vehicle Board from that portion of

the judgment which grants a peremptory writ of mandamus commanding them to set aside the revocation of the automobile dealers' licenses of Toyota of Visalia and Pioneer Dodge and to reconsider the penalties previously imposed. That part of the judgment which denies the petition for writ of mandamus is appealed by Toyota of Visalia and Pioneer Dodge.

The Department of Motor Vehicles (Department) filed accusations against Toyota of Visalia (Toyota) and Pioneer Dodge (Pioneer) alleging, respectively, 11 and 8 different categories of violations of the Vehicle Code.[2]

Thereafter, a hearing was held before an administrative judge who issued his proposed decisions, finding violations on all but one count and ordering revocation on four counts against Toyota and on two counts against Pioneer, as well as several consecutive suspensions for each dealership.

After these decisions were adopted by the Department, Toyota's and Pioneer's petitions for reconsideration were denied and the dealerships appealed to the New Motor Vehicle Board (Board).

The Board thereafter issued its decisions, in each case modifying the Department's decision and affirming it as modified. These modifications consisted of increasing three penalties (one against Toyota and two against Pioneer), decreasing five penalties (three against Toyota and two against Pioneer), and reversing the Department's finding of a violation on two counts against each dealership.

Thereafter, Toyota and Pioneer filed a petition for a writ of mandamus in the Superior Court of the County of Tulare, alleging that the dealerships were denied a fair hearing, the Board exceeded its jurisdiction by increasing the penalty on appeal, the decision was not supported by the findings, and the findings were not supported by the evidence.[3]

After the case was heard, the court issued a decision granting the petition with respect to the penalty imposed, but denying it with respect to the findings and the conduct of the hearing. A judgment and a peremptory writ were issued remanding the proceedings to the Board for reconsideration of the penalty assessed in light of the court's decision.

---

[2]All statutory references are to the Vehicle Code unless otherwise noted.

[3]Toyota and Pioneer were corporations both owned by Ottmar Thomas and his wife. In filing its petition for writ of mandamus in the superior court, Toyota did so for itself and for Pioneer as its successor. Pioneer had gone out of business by the time of trial.

ISSUES RAISED BY THE BOARD AND THE DEPARTMENT

I

█ Department and Board first contend that the Board does have authority to increase administrative penalties assessed against dealers by the Department. We agree.

The Board is a nine-member body within the Department. (§ 3000.) This body is required to hear appeals brought by new motor vehicle dealers from decisions of the Department. (§ 3050, subd. (b).) The powers of the Board in deciding such appeals are found in sections 3054 and 3055. Section 3054 provides that "The board shall have the power to *reverse* or *amend* the decision of the department if it determines that any of the following exist: . . . (f) The determination or penalty, as provided in the decision of the department is not commensurate with the findings." (Italics added.) Section 3055 provides that "The board shall have the power to *amend, modify,* or *reverse* the penalty imposed by the department." (Italics added.) █ It has been held that section 3055, empowering the Board to amend, modify or reverse a penalty imposed by the Department, is a legislative expansion of the powers of review granted it by section 3054, but that the Board is required to exercise such power with judicial discretion. (*Cozens* v. *New Car Dealers Policy & Appeals Bd.* (1975) 52 Cal.App.3d 21, 28 [124 Cal.Rptr. 835].)

The increased penalties were assessed as follows: As to the finding that Toyota placed inaccurate "PAC" stickers on vehicles which gave information about accessories, delivery, and freight charges that differed from the federal window sticker information on these vehicles, the Department imposed a 60-day suspension. The Board determined that the penalty was not commensurate with the finding and increased the penalty to license revocation. As to the finding that Pioneer overcharged on license fees, the Department issued a 10-day suspension. This was increased by the Board to a 15-day suspension. In addition, as to the finding that Pioneer advertised vehicles more than 48 hours after sale, the Department issued a 60-day suspension. The Board increased this to license revocation.

The trial court below agreed with the dealers' contention that it was the Legislature's intent to benefit aggrieved dealers by establishing the appellate process described above. The court noted that the language of the statutes outlining the powers and duties of the Board (i.e., "amend" and "modify") is unclear as to the Board's power to enhance penalties. The trial court stated, "A reading of the whole chapter relating to the creation of the New

Motor Vehicle Board supports Petitioners' position that the purpose of the Board was to provide an administrative appeal to aggrieved dealers. Thus, absent express statutory language that the Board could subject an appellant to more severe sanctions than those from which he appealed, the statutes in question should be construed as not empowering the Board to enhance penalties."

Board contends the words "amend" and "modify" in the statutes in question confer the ability to enhance as well as diminish Department's penalty. Board cites the Black's Law Dictionary definition of "amend" as meaning "To improve. To change for the better by removing defects or faults. . . . To change, correct, revise." (Rev. 4th ed. 1968.) In addition, Board cites the Black's Law Dictionary definition of "modify" as meaning "To alter; to change in incidental or subordinate features; enlarge, extend; limit, reduce." Thus, Board contends, "to modify the penalty could mean either to enlarge or reduce it." Board cites *American Telephone and Telegraph Company* v. *F. C. C.* (2d Cir. 1974) 503 F.2d 612, which commented on a similar dispute over the meaning of the term "modify": "As we noted initially, Section 203(b) clearly provides that the FCC has the power to 'modify' the notice requirement. AT&T concedes this but argues that the word 'modify' can only mean reduce and cannot be interpreted to mean enlarge. The FCC and the intervenors urge that to modify means to change or to alter whether or not this results in an increase or a decrease in the notice period. Each party and the intervenors have supplied etymological support for their positions. AT&T even resorts to the philological ultimate, the Latin root, *modificare,* in which it finds particular comfort. Before succumbing to semantic aphasia, *we are persuaded that to 'modify' means to alter or change whether this involves enlargement or reduction.* Black's Law Dictionary 1155 (4th ed. 1951) so defines the word and this is the normal meaning which lawyers and judges attribute the term. Certainly, to modify an opinion or an order, it is not necessarily to reduce it but simply to change it, irrespective of any quantitative result." (*Id.,* at p. 615, fns. omitted, italics added.)

Board cites the statutory rule of construction that when clearly intended or indicated, words in a statute should be given their ordinary meaning. (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 641-642 [122 P.2d 526].) Board contends that the Legislature knows how to place limitations on a reviewing board when it wants to do so. Board asserts that it did not do so in sections 3054 and 3055.

Toyota and Pioneer contend that the Legislature intended for the Board to use its penalty amending and modifying powers only for the *dealers'*

*benefit* because the Board's powers are only unleashed at the *dealers' request*.

Toyota and Pioneer also contend that if the Legislature had intended to give the Board extraordinary power to increase penalties without a request for increase, it would have included the appropriate enabling language. Pioneer and Toyota contend that "amend" and "modify" in the statutes in question are simply intended to let Board know that it may grant relief to appealing dealers short of complete reversal when the facts of the case do not warrant complete reversal.

Pioneer and Toyota contend that Board is ignoring the cardinal rule of statutory construction, which holds that the court should interpret statutes consistent with the intent of the Legislature so as to effectuate the purpose of the law. (See *Mercer* v. *Perez* (1968) 68 Cal.2d 104, 112 [65 Cal.Rptr. 315, 436 P.2d 315]; *Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122, 132 [142 Cal.Rptr. 325]; Code Civ. Proc., § 1859.) Pioneer and Toyota stress the primary rule of statutory construction to which every other rule must yield—that is, the intention of the Legislature should be given effect, and the language of any statute and provision therein may not be construed so as to nullify the will of the Legislature or to cause the law to conflict with the apparent purpose the lawmakers had in view. (*California Sch. Employees Assn.* v. *Jefferson Elementary Sch. Dist.* (1975) 45 Cal.App.3d 683, 691-692 [119 Cal.Rptr. 668]; *Struckman* v. *Board of Trustees* (1940) 38 Cal.App.2d 373, 376 [101 P.2d 151].)

 We first examine the general statutory purpose behind the creation of the Board. The issue before us is one of first impression and we note there is very little history of legislative intent to guide us.

The statute creating the New Car Dealers Policy and Appeals Board was passed by the Legislature in 1967 as Senate Bill No. 91. This bill was sent to the Senate Transportation Committee and the Assembly Committee on Government Organizations; however, these committees currently have no information relative to the bill in their files. Only a few documents appear in the Governor's chaptered bill file. One is a letter from former Senator Cologne, the author of Senate Bill No. 91, urging the Governor to sign the bill, mentioning that twice before a similar bill had been vetoed. Senator Cologne mentions the Board is a "self-policing type board" and notes the members "wish to clean up their own industry."

Section 3050 describes the duties of the Board. These duties include adopting rules and regulations relating to licensing of new car dealers, con-

sidering appeals presented by applicants for, or holders of, a new car dealer's license, and considering any matter concerning the activities or practices of any person applying for or holding a license as a new car dealer. After such consideration, Board may direct Department to conduct an investigation and make a report to Board, undertake to arbitrate or resolve any honest difference of opinion between any new car dealer and any member of the public, and direct Department to exercise its authority with respect to the issuance, renewal, refusal to renew, suspension or revocation of a license and certificate of any new car dealer.[4]

We recognize that an important purpose of the appeal process is to benefit aggrieved dealers; however, we believe this purpose is achieved *not* by limiting the Board's power to determine penalties, but by affording the dealer a review by his peers. As Board contends, the Legislature could have limited its review power if it had wanted to do so, as it did with the Alcoholic Beverage Control Appeals Board, which can only affirm or reverse a decision of the Department of Alcoholic Beverage Control and is prohibited from limiting the department's discretion in any way. (See Bus. & Prof. Code, § 23085.)

We believe the Board exists for more than just an instrument for aggrieved automobile dealers, as Toyota and Pioneer contend. Section 1 of Statutes 1973, chapter 996, page 1964 provides: "The Legislature finds and declares that the distribution and sale of new motor vehicles in the State of California vitally affects the general economy of the state and the public welfare and that *in order to promote the public welfare and in the exercise of its police power,* it is necessary to regulate and to license vehicle dealers, manufacturers, manufacturer branches, distributors, distributor branches, and representatives of vehicle manufacturers and distributors doing business in California in order to avoid undue control of the independent new motor vehicle dealer by the vehicle manufacturer or distributor *and to insure that dealers fulfill their obligations under their franchises and provide adequate and sufficient service to consumers generally.*" (Italics added.)

In addition, as has been pointed out in a recent article, while the executive secretary of Board has conceded that Board's primary purpose is the protection of dealers, he admits a secondary emphasis is on consumers' concerns. (Robertson, *The New Motor Vehicle Board: Are Consumers Being*

---

[4]Section 3050 also applies to applicants for, or holders of, a license as a manufacturer branch, distributor, distributor branch, or representative.

*Taken for a Smooth Ride?* (Summer 1983) 3 Cal. Regulatory L. Rep. p. 3.)[5] This article provides some insight into the background behind the creation of Board:

"State statutes protecting automobile dealers from the 'unequal bargaining power' of manufacturers have been around since the 1920's. In 1956 the federal government also enacted such a statute entitled 'The Dealers Day in Court Act,' later amended as the 'Automobile Dealers Franchise Act.' Finally, California produced similar legislation in 1967 and then expanded it in 1973, creating the New Motor Vehicle Board (NMVB) as its enforcement tool. At that time the Board was considered an innovative approach to the perceived dealer protection problem, and many states have enacted legislation similar to California's since then.

"The purported purpose of these statutes, and the California NMVB, *is the protection of consumers by controlling the relationship between auto manufacturers and their dealers.*" (*Ibid.*, fns. omitted, italics added.)

We hold the words "amend" and "modify" in sections 3054 and 3055 confer on the Board the ability to enhance as well as diminish penalties imposed by the Department. Words in a statute should be given their ordinary meaning (*County of Los Angeles* v. *Frisbie, supra,* 19 Cal.2d 634, 642) and we believe "amend" and "modify" by their ordinary meaning connote both the concepts of "increases" as well as "decreases." (See, e.g., *American Telephone and Telegraph Company* v. *F. C. C., supra,* 503 F.2d 612, 615.) Moreover, as we have seen, *supra,* the Board exists for the protection of the consumer, as well as the dealer. Thus, the Board, a "self-policing" body, does, and should, have the power to increase as well as decrease penalties imposed by the Department. If the Legislature desires to limit the Board's power, it certainly has the opportunity to do so.

## II

 Board next contends the trial court erred in finding that the penalty of revocation was excessive. The court in the instant case applied the independent-judgment standard to the record and found that the weight of the evidence supported the decision of Board as to each of its *factual findings.* However, the court below found that the *penalty* of revocation of license was excessive in that it appeared to far exceed other penalties imposed by Board in other similar actions. The court cited "Board's decisions" con-

---

[5]This article is sharply critical of cost of Board to the consumers. The article criticizes the idea that "Poor innocent automobile dealers require statutory protection from big, nasty opportunistic manufacturers with whom they freely entered into franchise agreements." (*Ibid.*)

cerning Pomona Chrysler-Plymouth, Inc. (No. A-85-79) and Dodge Country, Inc. (No. D-1995)[6] and *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1965) 62 Cal.2d 589, 595-597 [43 Cal.Rptr. 633, 400 P.2d 745].

Board contends that in a mandamus proceeding to review an administrative order, the determination of the penalty by an administrative body should not be disturbed in the absence of a manifest abuse of discretion. (See *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507, 514-516 [102 Cal.Rptr. 758, 498 P.2d 1006]; *Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74, 87 [17 Cal.Rptr. 488, 366 P.2d 816].) Board contends that Department and Board are familiar with the duties of vehicle dealers and the importance of the required procedures. "They also have a broad prospective on the gravity of the offenses because they see all the cases that occur throughout the state. It is because of their expertise in this area that great weight should be attached to their determinations (*Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75, 86)."

We now review the standard upon which the trial court in the instant case arrived at its decision.

■ Code of Civil Procedure section 1094.5, subdivision (c), provides that in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. Thus, the superior court reweighs the evidence and makes its own determination whether the administrative findings are sustained. And, where the superior court overturns such findings and an appeal is taken, the reviewing court gives the superior court's judgment the same effect as if it were rendered by any ordinary trial in that court. "In other words, on appeal the question is not whether the administrative determination was supported by the weight of the evidence, but whether, disregarding all contrary evidence, there is substantial evidence in support of the *trial court's findings.*" ■ ■ ■ ■ (5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 217, p. 3974; see *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 31 [112 Cal.Rptr. 805, 520 P.2d 29]; *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20]; *Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1132 [95 Cal.Rptr. 566]; *Almaden-Santa Clara Vine-*

---

[6]Actually, only Pomona Chrysler-Plymouth appealed the decision of the Department to the Board. As the result of an agreement reached with Department, Dodge Country, Inc., withdrew its notice of appeal to the Board.

*yards* v. *Paul* (1966) 239 Cal.App.2d 860, 866 [49 Cal.Rptr. 256].)[7] ■■■
On appeal, after the superior court has applied its independent judgment to the evidence, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences made to uphold the superior court's findings; moreover, when two or more inferences can be reasonably deduced from the facts, the appellate court may not substitute its deductions for those of the superior court. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72 [64 Cal.Rptr. 785, 435 P.2d 553]; *Lacy* v. *California Unemployment Ins. Appeals Bd.*, *supra*, 17 Cal.App.3d 1128, 1134.)

Board contends that the characterization of the issue of severity of the penalty is not a question of fact, but rather, a question of law; therefore, the appellate court owes no deference to the trial court's findings. Board contends that since the trial court upheld the violations, it is purely a question of law whether the revocation of Toyota's and Pioneer's licenses was an appropriate penalty for the violations. We do not think so.

■■■ The question of the appropriateness of a penalty is a mixed question of law and fact to which the appellate court may defer to the trial court on the basis of the substantial-evidence rule. (*Id.*, at pp. 1134-1135.)

In *Lacy*, the trial court determined in a mandamus action that an employer's order had been unreasonable and contrary to the administrative agency's finding below. The Court of Appeal held that the question of reasonableness was more in the nature of a factual issue than a legal one and upheld the trial court because there was substantial evidence to support its conclusion. The court recognized that the scope of appellate review may be dilated by viewing the issue as one of law rather than fact. (*Id.*, at p. 1134.) The court acknowledged that many issues might with equal force be classified as questions of law or questions of fact and noted that no one could say as a matter of law that the order of the employer was reasonable or unreasonable. "In consequence, the issue is one of fact and not of law. Since the trial court's characterization possesses substantial evidentiary support, we may not reinstate that of the administrative agency even though the latter has equal evidentiary support." (*Id.*, at p. 1135.)

---

[7]In all other cases, abuse of discretion is established if the trial court determines that findings are not supported by substantial evidence in light of the whole record. This limited review by the superior court (no weighing of the evidence) is the same kind as that accorded in appeals from judgments of trial courts in judicial proceedings. (5 Witkin, Cal. Procedure, *op. cit. supra*, Extraordinary Writs, § 217, p. 3974.) Moreover, the scope of review by the appellate court is the same as that of the trial court—a review of the administrative record to determine whether it is supported by substantial evidence. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242].)

We do not believe that one can say *as a matter of law* the penalties of revocation in the instant case are excessive or not excessive. The correctness of the penalty is not so apparent that only one inference can reasonably be drawn from the proved or admitted facts. Consequently, as in *Lacy,* we conclude the issue of excessiveness of the penalty is more an issue of fact than law.

As we have noted above, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences made to uphold the superior court's findings and, when two or more inferences can be reasonably deduced from the facts, this court may not substitute its deductions for those of the superior court.

The trial court found that the penalty of revocation far exceeded other penalties imposed by Board in similar actions. The trial court specifically referred to actions taken against Pomona Chrysler-Plymouth, Inc., and Dodge Country, Inc.

In Pomona Chrysler-Plymouth, there were seven different types of violations charged, at least four of which were the same types charged against Toyota and Pioneer. Two of these, advertising "free" merchandise and advertising a vehicle more than forty-eight hours after sale, were found to be grounds for revoking Toyota's and Pioneer's licenses, but not for Pomona's. Suspensions for numerous days were imposed against Pomona, but stayed pending a two-year probationary period.

In Dodge Country, Inc., there were four different types of violations charged: selling advertised vehicles for more than the advertised price; advertising vehicles for sale that were not available; representing used vehicles as new; and falsifying statements of fact filed with the Department. For these violations Dodge Country received suspensions for numerous days, but the suspensions were stayed for a one-year probationary period after the dealership served a three-day suspension.

Our review of the record reveals, and the trial court impliedly found, that for at least somewhat similar conduct, Toyota and Pioneer received the most severe penalty, revocation, while Pomona and Dodge Country figuratively had their "wrists slapped." While it is true that the trial court must give great weight to the penalty imposed by the administrative agency, there is no indication in the record before us that the trial court did not place such an emphasis. As discussed above, this court cannot reweigh the evidence or replace our judgment for that of the trial court. Resolving conflicts in favor of the trial court's ruling, we conclude evidence in the

record supports the trial court's finding that the imposition of the penalty of revocation was excessive.[8]

### III[9]

. . . . . . . . . . . . . . . . . . . .

### ISSUES RAISED BY TOYOTA AND PIONEER

### I[10]

. . . . . . . . . . . . . . . . . . . .

### II

■ Toyota and Pioneer next contend that Department and Board exceeded their jurisdiction in revoking Toyota's and Pioneer's licenses for the advertising of leases. Not so.

In finding IX of its Toyota decision, Department found: "Respondent, during June, 1979, advertised that it would lease both a new 1979 Toyota Corolla and a new 1979 Toyota Hilux pickup, for a price of $99.00 down and $99.00 per month. This advertisement was untrue and misleading since respondent had no intention of selling or leasing such vehicles at the advertised terms."

In finding IX of the Pioneer decision, Department found: "Respondent, during June 1979, advertised that it would lease two new vehicles for a price of $99.00 down and $99.00 per month. This advertisement was untrue and misleading since respondent had no intention of leasing these vehicles at the advertised terms."[11]

Department revoked Toyota's and Pioneer's licenses for these violations. Board concurred in the finding and the penalty. While not concurring in the penalty, the superior court below upheld the findings.

---

[8]We reject Toyota's and Pioneer's request that this court take judicial notice of the fact that approximately four years have transpired since most of the violations were committed without any further evidence of noncompliance by Toyota or Mr. Thomas. What has transpired since 1980 is not a part of the record and, in addition, not relevant to this appeal.

[9]See footnote 1, *ante.*

[10]See footnote 1, *ante.*

[11]It was found that the vehicles were often not on the lot and the financial terms made it "nearly impossible" for interested purchasers or lessees to qualify.

We believe that even though Department and Board do not have the authority to *regulate the leasing of vehicles,*[12] nonetheless, they have the authority to *regulate advertising by vehicle dealers,* irrespective of what the subject matter of the advertisement is. Section 11713, at the time relevant to this appeal, provided in pertinent part: "It shall be unlawful and a violation of this code for the holder of any license issued under this article:

"(a) To make or disseminate or cause to be made or disseminated before the public in the state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading; or to so make or disseminate or cause to be so disseminated any such statement as part of a plan or scheme with the intent not to sell any vehicle or service so advertised at the price stated therein, or as so advertised."

Toyota and Pioneer supply no authority for their proposition that Department and Board cannot regulate lease advertising by vehicle dealers. Section 11713, subdivision (a), clearly gives Department and Board authority to regulate advertisements if they are untrue or misleading. There is sound public policy for regulating misleading vehicle lease advertising by dealers in that such advertisements may attract customers to a dealership who might end up buying rather than leasing a vehicle. Furthermore, we reject the dealers' contention that since the second clause of section 11713, subdivision (a), deals only with "sales," their advertisements are not prohibited by the statute because they advertised "leases." Reviewing the administrative record, we conclude the advertisements in question strongly implied that the vehicles were for sale,[13] thereby bringing them within the scope of the second clause.

III—V[14]

. . . . . . . . . . . . . . . . . . . . .

---

[12]For requirements of automobile leases, see the Automobile Leasing Act, Civil Code section 2985.7 et seq.

[13]The Toyota ads stated, "That's right for only $99.00 down and $99.00 per month you can *own* a brand new '79 Toyota Corolla and a '79 Toyota Hilux pickup." (Italics added.) The Pioneer ads did not use the word "own" but were misleading nonetheless. The ads were surrounded by other ads for vehicles offered for sale and only in fine print does the ad indicate a "lease."

[14]See footnote 1, *ante.*

## VI

■ Finally, Toyota and Pioneer contend that the trial court's finding that their "free" merchandise advertising was untrue and misleading was not based on substantial evidence. Finding VII of the Department's decision in the Toyota case reads as follows: "Respondent, during the years 1978 and 1979, advertised it would give away free a Honda Express Moped with the purchase of any used car and would give away free a color TV or two ten-speed bikes with the purchase of any new or used car. These advertisements were untrue and misleading since the purchasers of the vehicles listed as items 7, 8, 21, 46, 47, 48, 49, 54, 56, 57, 61, and 89, in Schedule A, who bought new or used cars while the advertisement for free merchandise was still effective were not given the 'free' merchandise free of charge."

Finding VIII of the Department's decision in the Pioneer case was almost identical to the finding in the Toyota case. The findings in both cases were left intact by the Board and were also adopted by the trial court below. The Board revoked Toyota's and Pioneer's licenses for this "free" merchandise advertising, although the trial court disagreed with the penalty imposed.

Toyota and Pioneer contend that their advertisements were not false and misleading; however, they concede that their advertisements were in violation of the express terms of Department's regulation on free merchandise advertising. Title 13, California Administrative Code, section 403.08 provides as follows: "No merchandise shall be advertised as 'free' with the purchase of a vehicle if the advertised vehicle can be purchased from the advertiser at a lesser price without such 'free' merchandise. 'Free' merchandise offered in consideration of such things as 'visit our showroom', 'take a test drive', or phrases of similar nature, clearly and completely describe the conditions under which 'free' merchandise is offered."

Toyota and Pioneer contend that they did not violate section 11713, subdivision (a), which prohibits false and misleading advertising by dealers, but rather, they found themselves in violation of Department's regulations. They contend that if the advertisements would not be false and misleading in the absence of the regulation, then the regulations necessarily exceeded Department's authority to enact regulations, "in so much as a regulation cannot make unlawful that which is not made unlawful by the statute underlying the regulation." Not so.

The evidence produced at the administrative hearings showed that Toyota and Pioneer offered the free merchandise to customers who paid the *full retail price* for their vehicles. Evidence introduced at the Toyota hearings

indicated that there were signs posted on the dealership premises which notified the public that buyers desiring the free merchandise would not receive discounts on their car purchases. Customers insisting on discount of prices were told that they could get discounts only if they were willing to waive their right to the free merchandise. Customers who chose reduced car prices over the free merchandise were requested to execute written waivers of free merchandise.

In our opinion, such a campaign is necessarily false and misleading. Requiring customers to choose between discounts and the advertised "free" merchandise means that the offered merchandise is not truly and absolutely "free." The customer must give up something of value in order to get the free item. Since the merchandise was available only to customers who paid the full retail price for their vehicles, it was untrue and misleading to call something a "free gift with purchase" if the purchase could be made for less without a gift. We agree with Board's contention that if a vehicle were available at one price without the merchandise and available at a higher price with the merchandise, the "cost increment could only be characterized as payment for the merchandise, and therefore, it clearly was not free." Section 11713, subdivision (a), clearly provides that it is unlawful for a dealer to disseminate false or misleading advertisements. To help guide the car dealers, the administrative regulations clearly give notice to the dealers that "No merchandise shall be advertised as 'free' with the purchase of a vehicle if the advertised vehicle can be purchased from the advertiser at a lesser price without such 'free' merchandise." The judgment of the trial court is supported by substantial evidence.

The judgment is reversed insofar as it determines that the Board does not have the power to increase the penalties imposed by the Department; the judgment is otherwise affirmed. The trial court is directed to modify its judgment accordingly and to remand the cause to the Board for further consideration in accordance with this opinion.

Brown (G. A.), P. J., and Franson, J., concurred.