[No. C019165. Third Dist. Nov. 30, 1998.]

CHARLES SCOTT HUGHES, Plaintiff and Appellant, v.
BOARD OF ARCHITECTURAL EXAMINERS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part B.

686

**COUNSEL**

Smiland & Khachigian, William M. Smiland and Kenneth L. Khachigian for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Joel S. Primes and Steven M. Kahn, Deputy Attorneys General, for Defendant and Appellant.

## OPINION

HULL, J.—This case has been remanded to us by the California Supreme Court in order to resolve one issue: did the Board of Architectural Examiners (the Board) impose an excessive sanction in revoking the architect's license of plaintiff Charles Hughes? (*Hughes* v. *Board of Architectural Examiners* (1998) 17 Cal.4th 763, 795 [72 Cal.Rptr.2d 624, 952 P.2d 641].) We conclude the discipline imposed was well within the Board's discretion and therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant background to this case was set forth at length in *Hughes* v. *Board of Architectual Examiners*, *supra*, 17 Cal.4th at pages 768-772: "Charles Scott Hughes studied architecture at the University of Virginia and the Boston Architectural Center between 1970 and 1975 but did not receive a degree. Hughes successfully completed the architectural examination given by the Board of Architectural Examiners of Washington, D.C., but, having failed to submit his college transcript, he did not obtain an architectural license from that entity.

"Following an apprenticeship in several architectural firms, in 1982 Hughes established his own architectural firm. Initially, Hughes employed licensed architects to perform that part of the work that required licensure as an architect. Eventually, however, he personally performed work that required a license.

"In addition, Hughes took measures to conceal his lack of a license, and to hold himself out as a licensed architect. In 1981, the American Institute of Architects (hereafter, the AIA), sent Hughes a letter requesting that he cease representing himself to be a member of that organization. In 1986, Hughes applied for membership in the AIA, falsely stating on his application that he was licensed in Washington, D.C., and enclosing the certificate of registration of another architect upon which he had substituted his own name. Also in 1986, Hughes falsely stated on his resume that he was a registered architect in Washington, D.C., Virginia, and Maryland. During the period in which he operated his own firm, Hughes applied architecture stamps belonging to other licensed architects to work he himself had performed.

"In January 1989, while Hughes was engaged in the design of an addition to the residence of Dan Quayle, then Vice-President of the United States, it

was discovered that Hughes did not have a valid license. The Board of Architectural Examiners of Washington, D.C., initiated disciplinary proceedings. In addition, following his indictment by a grand jury, the Commonwealth of Virginia charged Hughes with one count of misrepresentation to a government agency in connection with representations he made in the course of performing architectural services for Arlington County. Hughes executed a plea agreement, pleading guilty to making a fraudulent misrepresentation to the county. In November 1989, the court ordered Hughes to perform 200 hours of community service, undergo counseling, and pay costs. Pursuant to Virginia law, the court suspended imposition of sentence until October 25, 1991, in order to permit Hughes an opportunity to meet the conditions of the court's order.

"Hughes promptly completed the conditions imposed and on February 1, 1990, contacted his probation officer, requesting advancement of the court appearance set to resolve the disposition of the case, to enable Hughes to represent that he had not suffered any prior convictions. On February 12, 1990, the probation officer wrote to the court requesting the advancement. On April 27, 1990, the Arlington County prosecutor entered a nolle prosequi requesting that the charge be dismissed. The charge was not formally dismissed until May 1, 1990.

"Meanwhile, on February 22, 1990, Hughes applied to the California Board of Architectural Examiners (hereafter, the Board) for a license to practice in California. Hughes enclosed the application with a transmittal letter explaining that he successfully had completed an architectural examination in Washington, D.C., in 1980 and the results of that examination were to be forwarded to the Board, but that he 'did not complete' his licensing at that time and therefore was seeking initial registration in California. On the application form itself, Hughes provided information concerning his prior employment for other architectural firms as well as his self-employment at his own firm. Hughes left blank that part of the form designated 'Licensed as:' and also indicated that he never had been licensed in any other state or foreign country. In the area of the form inquiring whether the applicant had been convicted of any offense and advising the applicant to report all convictions, including those dismissed pursuant to Penal Code section 1203.4 (dismissal of charges following fulfillment of probation terms), Hughes answered in the negative.

"On March 8, 1990, Hughes wrote a supplemental letter to the Board, disclosing that he had 'never completed the licensing process,' and that 'technically' his registration 'was never perfected' in Washington, D.C., because of his 'initial oversight' in failing to produce his college transcript.

The letter indicated that during the period in the 1980's when he operated his own firm, the majority of the services that he or his firm performed did not require the services of a licensed architect. The letter also disclosed that in 1989, Hughes's architectural firm became involved in civil litigation that had 'called into question' his professional licensing status, that his conduct had been the subject of 'a great deal of publicity,' that he had 'made a full disclosure' of the facts concerning his nonlicensure to the Washington, D.C., authorities (by whom 'investigations were instituted'), that he had 'closed his office,' that the Commonwealth of Virginia had charged him with one count of misrepresentation to a governmental agency, that he had entered a plea to the charge, that imposition of his sentence had been suspended, that he had been placed on probation, paid restitution, and performed community service, that 'on February 22, 1990, . . . all charges against [him] were dropped,' and that, as a result, no charges were pending against him and he had no record.

"The Board apparently did not respond to this communication. Hughes thereafter successfully completed the oral examination. On September 10, 1990, the Board issued Hughes a license.

"In May 1991, the National Council of Architectural Registration Boards (hereafter, NCARB) sent a letter to the Board informing it that Hughes had sought NCARB certification based upon his California registration, the certification form for which indicated that the Board 'has no derogatory information on file' concerning Hughes. NCARB indicated its understanding that Hughes previously had been denied registration in Virginia and Washington, D.C., 'on the basis of character.' NCARB suggested that the Board contact the boards of architectural examiners in those localities to obtain additional information. The Board then commenced an investigation.

"On February 5, 1992, the Board filed an accusation against Hughes, asserting that he was subject to discipline and seeking suspension or revocation of his license. Based upon Hughes's statements in his application and subsequent explanatory letter, made prior to actual dismissal of the charge, that he never had been convicted of criminal charges and that the charge previously instituted against him had been dismissed, the accusation alleged that Hughes knowingly had made a false statement of fact in his application to the Board ([Bus. & Prof. Code,] § 490 [further section references are to the Business and Professions Code unless otherwise designated]) and had obtained his license by fraud or misrepresentation (§ 5579).

"On June 29, 1992, the Board issued a supplemental accusation alleging three additional statutory violations. The Board asserted: (1) based upon his

guilty plea entered in Arlington County in October 1989, Hughes had been convicted of a crime substantially related to the qualifications, functions, and duties of an architect (§ 5577); (2) based upon his seeking admittance to the AIA by substituting the certificate of registration of another architect and falsely stating on the application that he was registered as an architect in the District of Columbia since 1977, in falsely stating on his resume that he was a graduate of the University of Virginia and a registered architect in Maryland, Virginia, and the District of Columbia, and in using the stamps or certificates issued to other architects on architectural plans that he personally had prepared in or about 1986, Hughes was guilty of fraud and deceit in the practice of architecture (§ 5583); (3) based upon his violation of Virginia law resulting in his guilty plea in October 1989, his misrepresentation or use of false documents in commercial dealings with Arlington County in January 1989, his submission of false information to the AIA, the false representations on his resume relating to his graduation from college and his professional licensure, and his improper use of the stamps or certificates of other architects in conjunction with his preparation of his own plans in or about 1986 as described above, Hughes was guilty of willful misconduct in the practice of architecture (§ 5584).

"On August 13, 1992, a hearing was conducted before an administrative law judge. Considerable evidence was presented concerning Hughes's alleged misrepresentations to the Board as well as his earlier wrongful conduct. On November 19, 1992, a proposed decision issued. Therein, the administrative law judge found that Hughes had not violated section 490 or 5579 and that section 5577 did not apply, because he ultimately had not been convicted in the Commonwealth of Virginia and had not knowingly misstated (at the time he communicated with the Board) that the charges previously had been dismissed. The administrative law judge also found, however, that Hughes had violated sections 5583 and 5584[1] because he personally had undertaken work requiring licensure, falsely had stated on his application to AIA that he had been registered to practice architecture in the District of Columbia since 1977 and had submitted therewith a falsified certificate of registration of another architect, falsely had stated on his resume that he was a graduate of the University of Virginia and a registered architect in Maryland, Virginia, and the District of Columbia, and had used or caused to be used the stamps of other architects on his own work during the period he operated his own firm. The administrative law judge ordered that Hughes's license be revoked.

---

[1]Section 5583 provides: "The fact that, in the practice of architecture, the holder of a license has been guilty of fraud or deceit constitutes a ground for disciplinary action."

Section 5584 provides: "The fact that, in the practice of architecture, the holder of a license has been guilty of negligence or willful misconduct constitutes a ground for disciplinary action."

"Initially, the Board issued an order of nonadoption of the findings and proposed decision of the administrative law judge. After considering the record of the administrative hearing and further written argument, on June 16, 1993, the Board issued a decision adopting the proposed decision of the administrative law judge that Hughes's license be revoked for his performance of architectural work requiring a license without having obtained licensure, his false statement that he had a license and his substitution of another individual's certificate in order to gain admission to the AIA, his false statements on his resume that he had graduated from college, and was a registered architect in several jurisdictions, and his use on his own work of architectural stamps belonging to others. Hughes's license was revoked effective July 24, 1993.

"On August 19, 1993, Hughes filed in superior court a petition for a peremptory writ of mandate pursuant to Code of Civil Procedure section 1094.5. That court denied the petition, determining that sections 5583 and 5584 authorized disciplinary action based upon prelicensure wrongful conduct, and that the Board was not estopped to revoke the license, and that the Board's choice of sanction—revocation—was not excessive.

"Hughes filed an appeal, and the Board also filed a cross-appeal. The Court of Appeal reversed the judgment of the superior court solely on the basis that the relevant disciplinary statutes did not apply to prelicensure wrongful conduct."

The Supreme Court granted review and, in *Hughes* v. *Board of Architectural Examiners*, *supra*, 17 Cal.4th at pages 772-795, concluded that discipline may be imposed pursuant to Business and Professions Code sections 5583 and 5584 for conduct that preceded issuance of the license. The Supreme Court remanded the matter to this court to decide one issue, namely, "whether the Board imposed an excessive sanction in revoking Hughes's license." (17 Cal.4th at p. 795.)

We turn to that question now.

## DISCUSSION

A. *The Board Did Not Abuse Its Discretion in Deciding to Revoke Hughes's Architect's License.*

■ Hughes contends revocation of his architect's license was an excessive sanction which constituted an abuse of the Board's discretion. We disagree.

■ The propriety of a sanction imposed by an administrative agency is a matter resting in the sound discretion of that agency, and that decision will not be overturned absent an abuse of discretion. (*Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755, 772 [221 Cal.Rptr. 779, 710 P.2d 845]; *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 404 [134 Cal.Rptr. 206, 556 P.2d 306].) "Neither a trial court nor an appellate court is free to substitute its discretion for that of an administrative agency concerning the degree of punishment imposed." (*California Real Estate Loans, Inc.* v. *Wallace* (1993) 18 Cal.App.4th 1575, 1580 [23 Cal.Rptr.2d 462]; see also *Lam* v. *Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29, 41 [40 Cal.Rptr.2d 137].) This rule is based on the rationale that "the courts should pay great deference to the expertise of the administrative agency in determining the appropriate penalty to be imposed." (*Matanky* v. *Board of Medical Examiners* (1978) 79 Cal.App.3d 293, 304 [144 Cal.Rptr. 826].)[2]

"One of the tests suggested for determining whether the administrative body acted within the area of its discretion is whether reasonable minds may differ as to the propriety of the penalty imposed. The fact that reasonable minds may differ will fortify the conclusion that there was no abuse of discretion." (*Lake* v. *Civil Service Commission* (1975) 47 Cal.App.3d 224, 228 [120 Cal.Rptr. 452].)

■ The Board found revocation of Hughes's license was warranted because he (1) had practiced architecture without a license; (2) submitted a forged certificate and made misrepresentations in support of his AIA (American Institute of Architects) application; (3) misrepresented his educational background and licensing status on his resume; and (4) used, or caused to be used, the stamps of other architects on his own work.

Hughes does not challenge the evidentiary support for these findings, but instead seeks to downplay the significance of these misdeeds by characterizing them as simply relating to his "zeal to achieve success in his field." He points out that he did not "steal client funds" or "design a building that collapsed," and notes that the quality of his work has never been questioned.

Discipline, however, is not limited to cases of theft or poor workmanship. Business and Professions Code sections 5583 and 5584 authorize disciplinary action in cases of fraud, deceit, negligence and willful misconduct. That

---

[2]Relying on *Toyota of Visalia, Inc.* v. *Department of Motor Vehicles* (1984) 155 Cal.App.3d 315, 325-327 [202 Cal.Rptr. 190], plaintiff argued in his opening brief on appeal that the trial court erred in failing to exercise its independent judgment when assessing the propriety of the discipline imposed. At oral argument he conceded that the proper inquiry is whether the Board abused its discretion in revoking his license. His concession was proper. (See *Kazensky* v. *City of Merced* (1998) 65 Cal.App.4th 44, 53-54 & fn. 3 [76 Cal.Rptr.2d 356].)

discipline may take any variety of forms, up to and including license revocation.

At oral argument plaintiff suggested that the court distinguish his dishonesty from that which directly and adversely affected his clients, urging in effect that license revocation based solely on significant professional dishonesty is excessive where clients have not been dissatisfied with or harmed by an architect's work. Closely related to this argument is his assertion that, since the dishonest conduct upon which the Board relied in making its decision to revoke his license, or at least most of it, predated his professional activity in California and since there was no evidence that such dishonesty would be repeated here in the future, the Board's decision to revoke his license was an abuse of its discretion.

We are unwilling to hold, as plaintiff's arguments would require, that the Board is precluded from revoking a person's license to practice architecture absent a showing of actual harm to a client in California. That holding would significantly diminish, at least, the protections intended by Business and Professions Code section 5583 and section 5584 and would be contrary to the commonsense notion that one with a demonstrated history of professional dishonesty in the past may well act in accordance with that history in his professional dealings in the future. There is nothing in the law or in logic that requires the existence of a victim, much less a victim in California, before the Board may order a license revoked as part of its effort to protect the people of California from unscrupulous conduct. A preventive response to plaintiff's professional dishonesty was within the Board's discretion.

Hughes demonstrated gross dishonesty on numerous occasions. He performed architectural work without a license, falsely stated that he had a license and substituted another's certificate in order to gain admission to the AIA, falsely stated on his resume that he had graduated from college and was a registered architect in several jurisdictions, and used the architectural stamps of others on his own work.

The severity of these acts cannot be minimized. The public is entitled to be protected from fraud, deceit, and willful misconduct just as much as it is entitled to be protected from shoddy architectural plans or an architect's embezzlement of client funds. The Board's decision to revoke plaintiff's license was well within its discretion.

**B.** *The Issues Set Forth in the Board's Cross-appeal Have Either Been Resolved Previously or Are Moot.\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. The Board of Architectural Examiners is awarded its costs on appeal.

Scotland, Acting P. J., and Puglia, J.,† concurred.

---

*See footnote, *ante*, page 685.

†Retired Presiding Justice of the Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.