[No. B239336. Second Dist., Div. Two. Dec. 13, 2012.]

SOHAIR HANNA, Plaintiff and Appellant, v.
DENTAL BOARD OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Norman L. Schafler for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alfredo Terrazas, Assistant Attorney General, Karen B. Chappelle and Geoffrey Ward, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**CHAVEZ, J.**—Sohair Hanna (appellant) appeals from a judgment of the superior court denying her petition for writ of mandate. Through the writ of mandate, appellant sought to overturn a decision of the Dental Board of California (the Board) revoking appellant's dental license. While acknowledging that she pled no contest to a felony count of Medi-Cal fraud, appellant argues that the penalty of license revocation was a manifest abuse of discretion. We find that the penalty imposed was authorized and fell within the Board's discretion, therefore we affirm the decision of the trial court.

## FACTUAL BACKGROUND

Appellant obtained her dental license in 1989. She began providing dental services to Denti-Cal beneficiaries in 1997. No patient ever complained to the Board about her services. From 1989 through 2005, appellant practiced dentistry with her husband, George Hanna. They were joint owners of the practice, and were the only two dentists working there.

In April 2001, George Hanna was convicted of felony Medi-Cal fraud, a violation of Welfare and Institutions Code section 14107, subdivision (b)(1). As a result, his dental license was temporarily suspended. Appellant continued to practice. She sold the practice in 2005.

### 1. Criminal proceedings

In April 2007, California's Department of Justice filed a felony complaint in Los Angeles Superior Court alleging: "From on or about April 25, 2003, to

on or about February 26, 2004, in the County of Los Angeles, State of California, defendant SOHAIR HANNA with intent to defraud, presented and caused to be presented for allowance and payment, false and fraudulent claims for furnishing services and merchandise under the Medi-Cal Act, in violation of section 14107, subdivision (b)(1), of the Welfare and Institutions Code, a felony."

This criminal fraud statute was the same statute appellant's husband was convicted of violating in 2001. On June 18, 2007, in Los Angeles Superior Court (*People v. Hanna* (2007, No. YA068030)), the criminal court accepted appellant's nolo contendere plea and convicted her of violating Welfare and Institutions Code section 14107, subdivision (b)(1).

The criminal court sentenced appellant to formal probation for three years. The terms of probation included excluding her as a Medi-Cal provider while she was on probation, requiring her to pay costs to the Department of Justice in the amount of $56,760, and requiring her to make restitution to Medi-Cal in an amount to be determined by an administrative law judge.

At the restitution hearing on June 28, 2010, the parties stipulated to restitution in the total amount of $100,000. Appellant was required to compensate the Department of Justice in the amount of $56,760, and to pay $43,240 in restitution to the State Department of Health Care Services.

## 2. *Administrative proceedings*

In April 2010, Richard DeCuir (complainant), in his official capacity as the executive officer of the Board, brought an accusation against appellant.[1] The accusation stated that appellant was "convicted of a crime substantially related to the qualifications, functions and duties as a licensed dentist." Specifically, the accusation stated that, from 2002 through 2004, appellant presented fraudulent claims for payment for 10 patients. Through the accusation, the complainant sought an order revoking or suspending appellant's dental license.

A hearing on the accusation took place on January 19, 2011. Appellant testified on her own behalf. She explained that in 2007, she was the subject of a criminal complaint. Appellant pled no contest to the criminal charges alleged in the criminal complaint. The reason she pled no contest was that her

---

[1] The Board is a government agency within California's Department of Consumer Affairs, and is primarily responsible for the licensing and disciplining of dentists. (Bus. & Prof. Code, §§ 1601.1, 1611.) The Board's highest priority is the protection of the public. (*Id.*, § 1601.2.)

All further statutory references are to the Business and Professions Code unless otherwise stated.

husband had been diagnosed with stage IV lymphoma, and she was the only person taking care of her husband at that time. She could not take the time to go to trial, or risk going to jail. Appellant testified that she "just wanted to settle the matter to focus on [her] husband's health." Appellant sold the dental practice in 2005 and took care of her husband until he passed away in 2008.

Appellant testified that she and her husband were co-owners of the dental business. They practiced together from the time that appellant was licensed in 1989. However, appellant testified that she was unaware of her husband's conviction for Medi-Cal fraud in 2001. She stated that she knew he had "some matters with Medi-Cal," but it was not of concern to her. Appellant conceded at the administrative hearing that, since the time of her conviction, she had not had any training, classes, or self-study relating to billing, Medi-Cal or Denti-Cal. However, she testified that she kept up with her regular continuing education to maintain her license.

The administrative law judge (ALJ) issued a proposed decision on April 12, 2011. On May 16, 2011, the Board adopted the proposed decision of the ALJ in full, to become effective on June 15, 2011. The decision explained that the criteria to consider when disciplining a licensee includes "the nature and severity of the crime, actual or potential harm to the public or to any patient, prior disciplinary record, number and variety of violations, mitigation evidence, rehabilitation evidence, compliance with terms of probation, criminal record, time passed since the acts occurred, and evidence of expungement of criminal proceedings under Penal Code section 1203.4." The Board concluded that, "[g]iven the seriousness of her misconduct, and her unwillingness to admit any wrongful acts or offer grounds to believe that those acts will not be repeated . . . [appellant] did not establish sufficient mitigation or rehabilitation to demonstrate that the public would be adequately protected if her license is not revoked." The Board ordered appellant's license to be revoked.

3. *Writ proceedings*

Appellant filed a petition for writ of mandate on July 11, 2011. Following briefing, the petition was heard on January 27, 2012. Appellant did not appear. The superior court issued a tentative decision denying the petition for writ of mandate, and later adopted the tentative decision as its final decision in a judgment filed on February 14, 2012.

On February 17, 2012, appellant filed her notice of appeal.

## DISCUSSION

Appellant concedes that the Board's findings are supported by the evidence. Appellant raises only one issue on appeal: whether the Board imposed

an excessively severe sanction on appellant in revoking her professional license. As set forth below, we conclude that the penalty imposed was within the Board's discretion.

## I. *Standard of review*

"The propriety of a sanction imposed by an administrative agency is a matter resting in the sound discretion of that agency, and that decision will not be overturned absent an abuse of discretion. [Citations.]" (*Hughes v. Board of Architectural Examiners* (1998) 68 Cal.App.4th 685, 692 [80 Cal.Rptr.2d 317] (*Hughes*).) As to issues reviewed in the superior court under an abuse of discretion standard, "the appellate court reviews the administrative determination, not that of the superior court, by the same standard as was appropriate in the superior court. [Citations.]" (*Schmitt v. City of Rialto* (1985) 164 Cal.App.3d 494, 501 [210 Cal.Rptr. 788] (*Schmitt*).)

Thus, when reviewing an issue regarding the level of discipline imposed, "the standard of review on appeal remains the same as it was in the superior court: the administrative agency's exercise of discretion as to the discipline to be imposed will not be disturbed unless a manifest abuse of discretion is shown. [Citation.]" (*Schmitt, supra,* 164 Cal.App.3d at p. 501.) " 'Neither a trial court nor an appellate court is free to substitute its discretion for that of an administrative agency concerning the degree of punishment imposed.' [Citations.]" (*Hughes, supra,* 68 Cal.App.4th at p. 692.) "This rule is based on the rationale that 'the courts should pay great deference to the expertise of the administrative agency in determining the appropriate penalty to be imposed.' [Citation.]" (*Ibid.*)

" 'One of the tests suggested for determining whether the administrative body acted within the area of its discretion is whether reasonable minds may differ as to the propriety of the penalty imposed. The fact that reasonable minds may differ will fortify the conclusion that there was no abuse of discretion.' [Citation.]" (*Hughes, supra,* 68 Cal.App.4th at p. 692.)

## II. *The Board did not abuse its discretion in imposing a penalty of license revocation*

### A. *The law supports the penalty of license revocation*

■ When an individual is convicted of a crime substantially related to the qualifications, duties and functions of her profession, cause exists to revoke or suspend her professional license. (§§ 490, subd. (a), 1670.1, subd. (a).) ■ Appellant was convicted of violating Welfare and Institutions Code section 14107, which makes it a crime for a Medi-Cal provider, "with intent

to defraud, [to] present[] for allowance or payment any false or fraudulent claim for furnishing services or merchandise . . . ." (§ 14107, subd. (b)(1).)[2]

■ Convictions for Medi-Cal fraud are substantially related to a professional's fitness or capacity to practice her profession. (*Matanky v. Board of Medical Examiners* (1978) 79 Cal.App.3d 293, 305 [144 Cal.Rptr. 826] (*Matanky*) ["Intentional dishonesty . . . demonstrates a lack of moral character and satisfies a finding of unfitness to practice medicine."].)

Furthermore, section 1670 provides that "[a]ny licentiate may have his license revoked . . . for unprofessional conduct . . . ." Unprofessional conduct is defined as, among other things, "[t]he obtaining of any fee by fraud or misrepresentation." (§ 1680, subd. (a).)

Section 1680, subdivision (x), also defines unprofessional conduct as "[a]ny action or conduct which would have warranted the denial of the license." A board may deny a license to an individual if the individual has been convicted of a crime, or if the individual engages in any act involving dishonesty, fraud, or deceit with the intent to substantially benefit himself or herself or another. (§ 480, subd. (a)(1) & (2).)[3]

■ Under the laws set forth above, license revocation is among the acceptable administrative penalties resulting from appellant's conviction for violation of Welfare and Institutions Code section 14107, subdivision (b)(1). The Board thus proceeded in a manner supported by the law.

### B. *The Board did not abuse its discretion in weighing the factors*

■ California Code of Regulations, title 16, section 1020, provides that, in considering the revocation of a license on the grounds of conviction of a crime, the Board shall consider the following criteria: (1) the nature and severity of the acts or crimes; (2) the individual's total criminal record; (3) the time that has elapsed since commission of the crime; (4) the extent to which the individual has complied with any terms of parole, probation, restitution, or any other sanctions lawfully imposed; and (5) evidence of expungement proceedings or rehabilitation.

Appellant argues that the Board did not adequately consider that appellant (1) had no previous criminal record; (2) had complied with the terms of her

---

[2] Section 490, subdivision (c) provides that a conviction "means a plea or verdict of guilty or a conviction following a plea of nolo contendere." Section 1670.1, subdivision (b) similarly provides that "a conviction following a plea of nolo contendere . . . is deemed to be a conviction within the meaning of this section."

[3] This statute also specifies that "[a] conviction within the meaning of this section means a plea or verdict of guilty or a conviction following a plea of nolo contendere." (§ 480, subd. (a)(1).)

probation and completed her restitution obligation; and (3) had an unblemished record with the State Department of Health Care Services and the Board during her first 16 years of practice. Further, appellant argues, there was no evidence that appellant provided poor quality services, performed unnecessary services, billed for work she did not do, or had been the subject of any patient complaints. Appellant emphasizes that the reason she pled nolo contendere to the charges was to ensure that she would be available at all times to care for her seriously ill husband, who died of stage IV lymphoma in 2008.

The record reveals no abuse of discretion in the Board's weighing of the factors relevant to license revocation. In considering the severity of the crime, the Board noted that appellant "committed significant Medi-Cal fraud over a 10-month period. Felony fraudulent billing is a serious offense involving moral turpitude." The Board noted that the conviction was less than four years ago and that appellant remained on probation for that crime.

The Board further noted that appellant presented no evidence of rehabilitation. Though she "admitted to the fraudulent Medi-Cal billing that formed the basis for her conviction, . . . at hearing she did not acknowledge that she committed Medi-Cal billing fraud."

The Board considered appellant's statement that she was "too occupied in caring for her husband to defend the criminal charge against her." The Board was free to accept or reject appellant's explanation of the circumstances surrounding her conviction. The Board interpreted appellant's position that her plea was solely a result of her husband's illness as an "unwillingness to admit any wrongful acts." Further, as the Board noted, appellant's attempt to impeach her conviction was impermissible. (See *Arneson v. Fox* (1980) 28 Cal.3d 440, 449 [170 Cal.Rptr. 778, 621 P.2d 817] ["an inquiry into the circumstances surrounding the offense 'should not form the basis of impeaching a prior conviction' "]; *Matanky, supra*, 79 Cal.App.3d at p. 302 ["Matanky's evidence of so-called mitigation introduced at the hearing was in actuality an attempt to impeach that judgment."]; see also §§ 480, 490, 1670.1 [board may discipline dentists for conviction following plea of nolo contendere].)[4]

Appellant emphasizes her "unblemished record" from the start of her practice until the practice was sold in 2005. The Board apparently did not

[4] Appellant cites two cases for the proposition that "[t]he law in the past has recognized that a no contest plea is often made for reasons other than the defendant's guilt." Neither of the two cases, *Caminetti v. Imperial Mut. Life Ins. Co.* (1942) 54 Cal.App.2d 514 [129 P.2d 432], or *Kirby v. Alcoholic Beverage Control Appeals Board* (1972) 7 Cal.3d 433 [102 Cal.Rptr. 857, 498 P.2d 1105], mentions criminal convictions or nolo contendere pleas. We find that the cases are irrelevant.

agree that appellant was blameless during this period of time. Her conviction included multiple acts of fraud beginning in April 2003. And while appellant was not directly involved in her husband's conviction for the same crime in 2001, the Board did not find her denial of knowledge of his conviction to be credible. Specifically, the Board noted: "In light of the fact that [appellant] and her husband were the only two dentists involved in the practice, which they owned together, and that she knew her husband's provider number was suspended, [appellant's] testimony that she was unaware of his criminal conviction lacks credibility."

The Board concluded that the seriousness of appellant's misconduct, her unwillingness to admit any wrongful acts, and her failure to establish that she had undergone any rehabilitation demonstrated that the public could not be adequately protected unless appellant's license was revoked. The record reveals a careful consideration of all relevant factors. We find no manifest abuse of discretion in the Board's decision to impose the penalty of license revocation, therefore we affirm.

## DISPOSITION

The judgment is affirmed.

Boren, P. J., and Ashmann-Gerst, J., concurred.