Filed 9/12/14  Certified for publication 10/8/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TUE NGOC HOANG,<br><br>　Plaintiff and Appellant,<br><br>　　　　v.<br><br>CALIFORNIA STATE BOARD OF PHARMACY,<br><br>　Defendant and Respondent. | G049275<br><br>(Super. Ct. No. 30-2013-00653422)<br><br>O P I N I O N |

　　　　Appeal from a judgment of the Superior Court of Orange County, Kirk H. Nakamura, Judge.  Affirmed.

　　　　The Amin Law Group, Ismail Amin, Saehwa Kang, and Katherine J. Vescera for Plaintiff and Appellant.

　　　　Kamala D. Harris, Attorney General, Alfredo Terrazas, Assistant Attorney General, Linda K. Schneider and Marichelle S. Tahimic, Deputy Attorneys General, for Defendant and Respondent.

Plaintiff Tue Ngoc Hoang, a pharmacist doing business as Orange Pharmacy (Orange), appeals from a judgment denying his petition for a writ of mandate. The petition sought to overturn a decision by defendant California State Board of Pharmacy revoking plaintiff's pharmacy license and Orange's permit to operate a pharmacy. Plaintiff argues defendant's decision was unduly harsh, not supported by the findings, and denied him due process. We disagree and affirm the judgment.

FACTS AND PROCEDURAL BACKGROUND

Plaintiff held a pharmacy license issued by defendant and was doing business as Orange under a permit defendant issued to it. As Orange's pharmacist-in-charge, plaintiff was responsible for the pharmacy's compliance with the laws and regulations concerned with the operation of the business. (Bus. & Prof. Code, § 4113, subd. (c).)

In November 2007, defendant filed an "Accusation," seeking to discipline plaintiff. The Accusation contained five counts. Four related to alleged unlawful and improperly documented drug transfers with another pharmacy.

A fifth count alleged plaintiff had engaged in dishonest, fraudulent or deceitful conduct. The Accusation alleged that during 2005 and 2006, Orange was not authorized to receive payments from CalOptima, an entity administering Medi-Cal benefits in Orange County, for filling qualified patients' drug prescriptions. Orange nonetheless unlawfully received nearly $150,000 in CalOptima payments through a covert arrangement with another pharmacy named Pacific Pharmacy (Pacific).

An administrative law judge (ALJ) conducted a three-day hearing on the Accusation. Plaintiff appeared through counsel, but did not personally attend the hearing. The ALJ issued a proposed decision finding the unlawful drug transfer and

2

documentation allegations unsupported by the evidence, but that Orange engaged in "dishonest conduct" concerning CalOptima payments for which plaintiff was "personally responsible."

The ALJ's decision cited the following evidence in support of the finding of dishonesty and fraud. Prior to 2005, plaintiff had a contract with the pharmacy benefits manager (PBM) that processed prescription drug claims for patients covered by CalOptima. That year CalOptima imposed a new condition, which required each pharmacy contracting with its PBM to permit on-site reviews of its operations as part of a fraud prevention program.

Pacific agreed to the new on-site review condition, but plaintiff objected to it and refused to renew his contract with CalOptima's PBM. In April, CalOptima notified plaintiff that it had terminated Orange's authorization to seek payment for filling its patients' drug prescriptions.

To retain the patronage of Orange's Medi-Cal patients, plaintiff entered into a surreptitious arrangement with Que Buu, Pacific's pharmacist in charge, whereby Orange used Pacific's billing authority to obtain payment for filling the drug prescriptions of persons covered by CalOptima. Under the arrangement, Orange created a set of labels containing its name, address, and phone number for each CalOptima-qualified patient for whom it filled a prescription. Orange sent Pacific a record of having filled the prescription and Pacific then created a duplicate set of prescription labels for the same patients. Using its label, Pacific applied to CalOptima's PBM for payment, thereby representing to the PBM that it had filled the prescription. Upon receiving payment from CalOptima for the drug prescriptions actually filled by Orange, Pacific then funneled the money to Orange. Both pharmacies maintained records of the prescriptions Orange sent to Pacific for collection, the reimbursements Pacific received from the PBM, and the payments Pacific made to Orange. To foster an appearance of legitimacy for this

3

arrangement, Orange and Pacific also created documents such as refill pharmacy contracts, purchased and borrowed logs, returned to stock memoranda, and labels that incorrectly stated that prescriptions had been transferred.

At the hearing, defendant presented evidence that, between July and December 2005, payments from CalOptima's PBM to Pacific increased from approximately $43,000 to over $73,000. One of defendant's inspectors estimated 38 percent of Pacific's reimbursements from CalOptima between August 2005 and November 2006 were for Orange-filled prescriptions. He prepared a tabulation of invoices Orange had provided to Pacific for billing CalOptima that totaled over $149,000.

During a September 2006 inspection of Pacific, one of defendant's inspectors discovered a log for Orange's prescriptions. Buu acknowledged the existence and purpose of the arrangement between Orange and Pacific. Subsequently, defendant's inspectors visited Orange and spoke with Paul Hoang, plaintiff's son and the pharmacy's business manager.

Hoang testified at the hearing, claiming Orange and Pacific "[w]ere acting as refill pharmacies" for each other, "including . . . CalOptima patients." He stated, "We never believed that what we did was wrong or dishonest." But Buu contradicted Hoang, admitting Pacific billed CalOptima for drug prescriptions filled by Orange and denied Orange acted as a refill pharmacy for Pacific in 2005 and 2006.

In his proposed decision, the ALJ recommended plaintiff's pharmacy license and Orange's permit be revoked, but the revocations be stayed for five years with both placed on probation with certain conditions. Defendant timely issued an order of nonadoption of the ALJ's proposed decision and stated it would decide the matter based on the record produced during the administrative hearing along with written argument from the parties.

After receiving briefs from both parties, defendant issued its decision revoking plaintiff's license and Orange's permit. Defendant's factual findings largely

4

repeated the ALJ's findings. Citing its disciplinary guidelines, defendant found plaintiff's conduct constituted a Category III violation, which includes "fraudulent acts committed in connections with the licensee's practice." The minimum level of discipline for a Category III violation is revocation, stayed, three to five years probation, and 90 days of actual suspension. The maximum discipline is license revocation. Similar levels of discipline apply to a pharmacy permit.

Defendant gave the following explanation for revoking the license and permit: "In order to determine the appropriate measure of discipline, it is necessary to weigh and balance [plaintiff's] violations of law as well as factors in justification, aggravation, or mitigation. Protection of the public is the Board's highest priority. . . . [¶] [Plaintiff], as the owner and pharmacist-in-charge of Orange Pharmacy, is responsible for the dishonest and fraudulent acts attributable to both licenses. The cause for discipline proven is serious and demonstrates [plaintiff's] willingness to commit dishonest acts for his own financial gain. In aggravation, these acts were also not isolated incidents, but rather occurred several times over many months and involved deliberate acts to deceive a public benefits program. These acts also demonstrate that [plaintiff] refused to abide by standards set by a county-organized integrated health care system in deliberate disregard of the public policy set by an agency acting on behalf of the public. Although [plaintiff and Orange] have, so far, had an unblemished history with the Board, these violations call into question [plaintiff's] judgment and trustworthiness. His failure to acknowledge the violations and submit evidence that he accepts responsibility is troubling. The Board is also concerned about the lack of any evidence of remorse or the submission of any evidence that [plaintiff] had undergone any sort of rehabilitation with respect to his conduct. Without such evidence, the Board cannot offer assurances that such conduct might not repeat and that [plaintiff and Orange] are safe to practice with or without restriction."

5

Plaintiff filed a petition for a writ of administrative mandamus in the superior court and obtained a temporary stay of the license and permit revocations. After a hearing, the trial court, exercising its independent judgment, denied the petition, terminated the stay imposed on defendant's license and permit revocation order, and denied plaintiff's request for a further stay pending this appeal. Plaintiff sought to extend the stay by filing a petition for a writ of supersedeas in this court, but we denied relief.

DISCUSSION

Plaintiff notes defendant's disciplinary guidelines contain a list of 15 factors it must consider in determining the level of discipline to impose. He claims a review of these factors "shows that revocation . . . was a grossly disproportionate penalty under the circumstances" and thus defendant's "decision was not supported by its findings." Alternatively, he contends defendant's decision to reject the ALJ's proposed decision and issue its own ruling resulted in a denial of constitutional due process because he and Orange "were not afforded a final hearing before their license and permit were subsequently revoked . . . ." Plaintiff's arguments lack merit.

This appeal involves a writ seeking relief from an adverse administrative proceeding under Code of Civil Procedure section 1094.5. That statute provides, "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).) "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent

6

judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence." (Code Civ. Proc., § 1094.5, subd. (c).)

Defendant is authorized to bring formal disciplinary proceedings against anyone holding a pharmacy license. (Bus. & Prof. Code, § 4300, subds. (b), (e); Gov. Code, §§ 11500 et seq.) Thus, it had the jurisdiction to consider whether plaintiff's actions warranted revocation of his pharmacy license. (Bus. & Prof. Code, § 4300, subds. (a) ["Every license issued may be suspended or revoked"], (b) ["The board shall discipline the holder of any license . . . whose case has been heard by the board and found guilty"].)

Also, the procedure employed in this case was the manner provided by law for conducting a disciplinary action. Business and Professions Code section 4300, subdivision (e) declares disciplinary proceedings shall be conducted under the Administrative Procedures Act (Gov. Code, § 11500 et seq.). Government Code section 11517, subdivision (c)(1) authorizes "a contested case" to be "originally heard by an administrative law judge." After the ALJ issues his or her proposed decision, "[t]he agency may" take one of five courses of action. One alternative is "Reject the proposed decision, and decide the case upon the record, including the transcript . . . with or without taking additional evidence." (Gov. Code, § 11517, subd. (c)(2)(E); see *Kifle-Thompson v. State Bd. of Chiropractic Examiners* (2012) 208 Cal.App.4th 518, 531 ["the Board was well within its jurisdiction to reject the ALJ's proposed decision, and render its own decision based 'upon the record, including the transcript . . . with or without taking additional evidence[]'" and "[o]nce the Board determined not to adopt the proposed decision, that decision served no 'identifiable function in the administrative adjudication process or, for that matter, in connection with the judicial review' of that process"].)

Plaintiff's claim the foregoing procedure violated his and Orange's right to due process of law and denied them a fair trial is incorrect. In *Gore v. Board of Medical*

7

*Quality Assurance* (1980) 110 Cal.App.3d 184, a physician, was charged with having engaged in gross negligence, but after a hearing, an ALJ exonerated him. The defendant board rejected this proposed decision, made a finding of gross negligence, and suspended the plaintiff's license. On appeal, the plaintiff asserted the very same argument made in this case. The appellate court rejected it. "There is no merit in petitioner's claim that the administrative procedure prescribed by section 11517, subdivision (c) of the Government Code is unconstitutional because it authorizes respondent board to decide the case for itself if the proposed decision by the administrative judge is not adopted. [¶] The requirements of due process of law are fully met where, as here, the licensee was accorded judicial review of the administrative decision in which the court weighed the evidence and rendered its independent judgment on the merits. [Citations.]" (*Id.* at p. 190.)

In this case, the ALJ conducted a three-day evidentiary hearing and then issued a proposed decision that defendant chose not to adopt. Government Code section 11517, subdivision (c)(2)(E)(ii) allowed defendant to receive additional briefing from the parties and redecide the matter and reach a different conclusion even though its decision is based on the evidence previously introduced during the administrative hearing. Finally, defendant's ruling was subject to independent review by the superior court under Code of Civil Procedure section 1094.5. Plaintiff and Orange were accorded due process and a fair trial in this case.

Plaintiff argues his right to maintain his existing pharmacy license and Orange's right to retain its permit to operate a pharmacy constitute fundamental rights. We agree. (*San Benito Foods v. Veneman* (1996) 50 Cal.App.4th 1889, 1896-1897 [food processor's license a fundamental right; "While the administrative agency's decision had a purely economic effect on plaintiff . . ., the nature of the right itself was crucial to plaintiff's economic viability"].) In this circumstance, "the superior court exercises its

8

independent judgment upon the evidence disclosed in a limited trial de novo in which the court must examine the administrative record for errors of law and exercise its independent judgment upon the evidence." (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1057.) But in doing so, "a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)

The trial court expressly stated in its statement of decision that it exercised its independent judgment in ruling on the petition and found defendant's decision was supported by "the weight of the evidence." On appeal, "[e]ven when . . . the trial court is required to review an administrative decision under the independent judgment standard of review, the standard of review on appeal of the trial court's determination is the substantial evidence test. [Citations.]" (*Fukuda v. City of Angels, supra,* 20 Cal.4th at p. 824.)

The balance of plaintiff's argument concerns the propriety of defendant's decision to revoke his license and Orange's permit. Although plaintiff repeatedly asserts he does not believe he did anything wrong, his appellate briefs do not even provide a summary of the evidence, much less explain why it fails to support defendant's findings.

As noted, defendant is authorized by statute to determine whether to suspend or revoke a pharmacist's license where it finds the licensee has engaged in unprofessional conduct. (Bus. & Prof. Code, §§ 4300, subd. (a).) Unprofessional conduct includes "any act involving moral turpitude, dishonesty, fraud, deceit, or corruption." (Bus. & Prof. Code, § 4301, subd. (f).) We review a claim an administrative agency imposed excessive discipline for abuse of discretion. "'In reviewing the severity of the discipline imposed, we look to the correctness of the

9

agency's decision rather than that of the trial court.' [Citation.] '"The penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated. [Citations.] *Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed.* [Citation.]" [Citation.] [¶] "In reviewing the exercise of this discretion we bear in mind the principle 'courts should let administrative boards and officers work out their problems with as little judicial interference as possible . . . . Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere.'"' [Citation.] 'The policy consideration underlying such allocation of authority is the expertise of the administrative agency in determining penalty questions.' [Citation.]" (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 633.)

There was no abuse of discretion here. The guidelines state "[n]o single one or combination of the . . . factors is required to justify the minimum and/or maximum penalty in a given case," and that the recommended discipline for the categories of violations "assume a single violation of each listed statute or regulation." Thus where, as here, there are "multiple violations, the appropriate penalty shall increase accordingly." With the assistance of another pharmacy, plaintiff, as Orange's pharmacist-in-charge, intentionally created an elaborate scheme that allowed Orange to repeatedly skirt CalOptima's requirement that it participate in the agency's fraud prevention program in order to be authorized to seek payment for filling the drug prescriptions of qualified patients. The evidence supports a finding that not only did Pacific use its prescription labels to obtain payment for prescriptions filled by Orange, the two pharmacies also created false documents to assist in covering up their scheme.

Plaintiff argues he did not financially benefit from the scheme. We disagree. The fraudulent use of Pacific's billing authority to receive payments from

10

CalOptima allowed plaintiff and Orange to retain the patronage of Medi-Cal patients who otherwise would have likely filled prescriptions through another pharmacy.

He also claims license revocation "is reserved only for dangerous conduct that threatens the safety of the public." But plaintiff cites no authority for this proposition and, in fact, the law is to the contrary. In upholding a board's decision to revoke an architect's license for fraud, deceit, and willful misconduct, *Hughes v. Board of Architectural Examiners* (1998) 68 Cal.App.4th 685 declared: "We are unwilling to hold, as plaintiff's arguments would require, that the Board is precluded from revoking a person's license . . . absent a showing of actual harm to a client," in part because it "would be contrary to the commonsense notion that one with a demonstrated history of professional dishonesty in the past may well act in accordance with that history in his professional dealings in the future. There is nothing in the law or in logic that requires the existence of a victim . . . before the Board may order a license revoked as part of its effort to protect the people of California from unscrupulous conduct" (*id.* at p. 693).

In addition, plaintiff never presented any evidence reflecting he was remorseful for his behavior or that he had made efforts to obtain counseling. In fact, he continues to insist, contrary to the findings of both the ALJ and defendant, the scheme of falsely representing to CalOptima's PBM that Pacific had filled prescriptions actually filled by Orange, was not wrong. Defendant found plaintiff's "failure to acknowledge the violations and submit evidence that he accepts responsibility [to be] troubling," and expressed "concern[] about the lack of any evidence of remorse or the submission of any evidence that [plaintiff] had undergone any sort of rehabilitation with respect to his conduct." Contrary to plaintiff's argument, the consideration of his lack of remorse or proof of rehabilitation was appropriate. (*Hanna v. Dental Bd. of California* (2012) 212 Cal.App.4th 759, 767 [no abuse of discretion where board revoked license in part finding licensee's "unwillingness to admit any wrongful acts, and her failure to establish that she

11

had undergone any rehabilitation demonstrated that the public could not be adequately protected unless appellant's license was revoked"].)

Given these factors, we conclude defendant properly exercised its discretion in revoking plaintiff's pharmacy license and Orange's permit.

DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

BEDSWORTH, J.

FYBEL, J.

12

Filed 10/08/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TUE NGOC HOANG, | |
| Plaintiff and Appellant, | G049275 |
| v. | (Super. Ct. No. 30-2013-00653422) |
| CALIFORNIA STATE BOARD OF PHARMACY, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

Defendant and Respondent California State Board of Pharmacy requested that our opinion filed on September 12, 2014, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED. The opinion is ordered published in the Official Reports.

RYLAARSDAM, ACTING P. J.

WE CONCUR:


BEDSWORTH, J.


FYBEL, J.