Filed 8/6/15; pub. order 8/26/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANDREW M. STERNBERG, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA STATE BOARD OF PHARMACY, <br><br> Defendant and Respondent. | B255862 <br><br> (Los Angeles County <br> Super. Ct. No. BS138984) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert H. O'Brien, Judge.  Affirmed.

Andrew M. Sternberg, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Linda K. Schneider, Assistant Attorney General, Thomas L. Rinaldi and Zachary T. Fanselow, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Representing himself, Andrew M. Sternberg appeals the trial court's denial of a petition for a writ of administrative mandate. (Code Civ. Proc., § 1094.5.) He seeks to reverse a decision by the California State Board of Pharmacy (Board) subjecting his pharmacist's license to discipline following the discovery of an employee's widespread theft of a dangerous drug from the pharmacy Sternberg supervised as the pharmacist-in-charge. We affirm.

## BACKGROUND

Sternberg obtained his pharmacy license in 1978. Between 2001 and 2012, he worked as the pharmacist-in-charge at a Target store in West Hills, California. During a two-year period while he supervised the Target pharmacy—September 1, 2006, to August 31, 2008—Imelda Hurtado, a pharmacy technician, stole at least 216,630 tablets of Norco[1] from the pharmacy, with an estimated retail value of up to $1.50 per tablet, or $324,945, and street value of up to $5 per tablet, or $1,083,150. Sternberg was subject to licensing discipline for the theft. Prior to this incident, Sternberg had no history of discipline.

Hurtado accomplished this theft as follows: She would place orders for up to 3,000 tablets (six bottles with 500 tablets per bottle) to be delivered to the pharmacy on a day she was scheduled to work. She did this approximately 85 times, as often as three times a week. When orders arrived, she would take the delivery to a work station farthest away from the pharmacist's station. She would then remove the six bottles, hide them in the store room, and destroy the packing invoice. When the pharmacist on duty took a lunch break, she would go to the store room, put three bottles in her purse, and take them out to her car. Later in the day, when the pharmacist was on a break, she would take the other three bottles to her car in the same manner. Her theft was discovered when Sternberg found a bottle of Norco in the store room. The Target pharmacy normally did

---

[1] Norco is a drug combining nonnarcotic acetaminophen with narcotic hydrocodone. It is a dangerous drug pursuant to Business and Professions Code section 4022 and a schedule III controlled substance pursuant to Health and Safety Code section 11056, subdivision (e)(4).

not sell Norco, so Sternberg notified Target management and Target initiated a loss prevention investigation. Hurtado was eventually caught on surveillance and arrested with 3,000 stolen Norco tablets.

Based on this incident, the Board filed an accusation against Sternberg (as well as Target, which was resolved) alleging six causes for discipline: (1) a violation of Business and Professions Code sections 4301, subdivisions (j) and (*o*), 4005, 4081, and 4105,[2] and California Code of Regulations, title 16, section 1718, for failure to maintain a complete and accurate record for all controlled substances/dangerous drugs received, sold, or otherwise disposed of; (2) a violation of sections 4301, subdivisions (j) and (*o*), 4081, subdivision (a), and 4105 for failing to maintain records of acquisition and disposition for three years; (3) a violation of sections 4301, subdivision (*o*) and 4059.5 for allowing Hurtado, a nonpharmacist, to order and sign for three deliveries of the Norco; (4) a violation of sections 4301, subdivision (*o*) and 4115, subdivision (h) for failing to properly supervise Hurtado and allowing her to steal the Norco; (5) a violation of sections 4301, subdivision (*o*) and 4005 and California Code of Regulations, title 16, section 1714, subdivision (b) for failing to secure and maintain the facilities, space, fixtures, and equipment from theft; and (6) a violation of sections 4301, subdivision (*o*) and 4005 and California Code of Regulations, title 16, section 1714, subdivision (d), for failing to provide effective controls to prevent the theft of the Norco and maintain records for the drug.

Sternberg timely filed a notice of defense, requesting a hearing on the six grounds. After a hearing, an administrative law judge issued a proposed decision finding Sternberg liable on all but the fifth ground and proposing to publicly reprove him. The Board rejected that decision and instead found Sternberg liable on all six grounds, revoking his pharmacist's license but staying the revocation and placing his license on probation for three years with specific conditions.

---

[2]     All undesignated statutory citations are to the Business and Professions Code unless otherwise noted.

In its decision, the Board considered the scope of the theft "staggering," particularly considering the pharmacy did not ordinarily sell Norco tablets and there were no Norco sales at all during a six-month period when Hurtado was not employed at the pharmacy. It made detailed factual findings on Sternberg's inventory and supervisory lapses:

"The wholesaler ('supplier') typically delivered the drug orders to the pharmacy between 12:30 p.m. and 1:00 p.m. . . . Section 4059.5 of the Pharmacy Law requires that a pharmacist sign for and receive all dangerous drugs or devices delivered to a pharmacy. [Sternberg] testified that his policy was that 'everybody that works in the pharmacy knows that the law prevents anybody from signing for deliveries, except a pharmacist.' . . . [Sternberg] did not explain how he would enforce that policy, nor was there any evidence presented as to how that would be implemented. With respect to receipt of drug deliveries, when [Sternberg] signed for the delivery of dangerous drugs he would sign a 'delivery log that is supplied by the supplier'; however, that log only disclosed how many containers were being delivered, not what was in the actual containers. . . . He would then count the number of bottles, and give the tote to a pharmacy technician who he assigned to take care of unpacking the drugs, placing appropriate shelf labels on the bottles, and checking the invoice/packing slip inside the box to assure that the supplier delivered what was ordered. After [Sternberg] signed for the drugs, he 'never' looked at the invoices being taken out of the delivery container and did not check the invoices against the drugs he received. . . . [Sternberg] admitted that as the Pharmacist-in-Charge he had the 'discretion' to examine the invoices, but chose not to do so. . . . The invoices he received were given to a pharmacy technician, who then placed them in a box under a counter. After the box was filled, it was then transferred to a 'little storage area' in the pharmacy. . . . The box was not checked regularly by any pharmacists, but 'occasionally' [Sternberg] or another pharmacist would look at those invoices, but only 'for a specific drug that we had to order for somebody to see if it came in or if it didn't come in.' . . . As a result, the missing inventory and invoices were only discovered by chance, and not for at least 18 months . . . ." (Citations and fn. omitted.)

4

The Board further found Sternberg did not require the pharmacy to close while the pharmacist on duty went to lunch or implement other security measures to ensure adequate supervision of the pharmacy. The pharmacy's telephonic ordering system also permitted anyone with the pharmacy's access code to place orders from anywhere, and Hurtado had that code and apparently placed orders from her home, which Sternberg failed to audit. The Board also noted that Sternberg signed for approximately 25 percent of the Norco deliveries and Hurtado signed for three deliveries herself, which she was not permitted by law to do. Sternberg was not working on two of the three days she signed for deliveries.

According to the Board, had Sternberg "properly supervised staff and conducted random checks of the containers that [Sternberg] was signing for, the thefts may have been discovered much sooner. [Sternberg's] failure to do random checks of the invoices or orders coming in allowed Hurtado the opportunity to destroy any paper evidence that might have alerted [Sternberg] to her thefts. Further, there was no evidence that loss prevention practices were in place, such as secured equipment for the storage of such drugs. The delivery of 3000 tablets to the pharmacy at one time and the disappearance of such drugs from a 'secured' location would have been discovered by [Sternberg] if proper management and supervision . . . had occurred."

Finally, the Board rejected testimony from Sternberg's expert witness, who testified "that it is not the custom and practice, nor the standard of care in the community, for a pharmacist to watch the technician open a drug delivery tote and label the bottles and that the pharmacist is ordinarily occupied with either checking the prescriptions filled by other personnel, or consulting with clients about their medications . . . ." The Board called the opinion "neither an accurate nor complete assessment of what is required under the law." Instead, according to the Board's expert witness, who was also a pharmacist and whom the Board described as having "specialized knowledge and experience in this area," the pharmacist-in-charge's legal duties included "overseeing the daily operations of the pharmacy and being the 'person responsible for their compliance with pharmacy law.' . . . Based upon these responsibilities, it is expected that the pharmacist-in-charge

5

would perform some random audits of drug deliveries that he signed for, conduct checks of his staff's work, and actively participate in checking inventory as well as the drugs delivered to the pharmacy. These acts did not occur in this case." (Citation omitted.)

As part of its conclusions of law, the Board interpreted section 4081 to hold a pharmacist-in-charge responsible for violations regardless of whether he or she had actual knowledge of the violations or authorized the violations.

Sternberg thereafter requested reconsideration of the decision, which the Board granted, limited to modifying the "tolling of probation" condition of probation. Sternberg requested reconsideration a second time, but the Board denied the request.

Sternberg then petitioned for a writ of administrative mandamus in the trial court pursuant to Code of Civil Procedure section 1094.5. He contended the Board erred in three ways: (1) it improperly found he had a duty to randomly audit invoices and keep scheduled drugs locked in a secured area, given Hurtado destroyed invoices and hid the Norco so no one else knew it was in the pharmacy; (2) it improperly found the pharmacist-in-charge's duties included performing random audits of drug deliveries, checking staff work, and participating in checking inventory delivered to the pharmacy because neither side's expert testified that the pharmacist-in-charge had those duties; and (3) the Board incorrectly interpreted Business and Professions Code section 4081 to apply to him when he did not know Hurtado was stealing the Norco.[3]

Exercising its independent judgment, the trial court denied the petition, finding the Board correctly interpreted section 4081, the evidence supported the Board's findings, those findings supported the Board's decision, and the Board did not abuse its discretion in imposing discipline. Sternberg timely appealed.

---

[3]     He also challenged two orders by the Board, but he does not raise those contentions on appeal.

## DISCUSSION[4]

### 1. *Standard of Review*

This case involves a writ brought pursuant to Code of Civil Procedure section 1094.5, which provides in relevant part, "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).) "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence." (Code Civ. Proc., § 1094.5, subd. (c).)

Because Sternberg has a fundamental right to maintain his pharmacy license, the trial court properly exercised independent judgment in reviewing the Board's decision. (*Hoang v. California State Bd. of Pharmacy* (2014) 230 Cal.App.4th 448, 455.) On appeal, we review the trial court's factual determinations for substantial evidence and we review questions of law de novo. (*Governing Bd. of Ripon Unified School Dist. v. Commission on Professional Competence* (2009) 177 Cal.App.4th 1379, 1384; see *Hoang, supra*, at p. 456.) In reviewing for substantial evidence, we "'must resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable inference in support of the judgment.' [Citation.] If more than one rational inference can be deduced from the facts, we may not replace the trial court's conclusions with our own. [Citation.] We may reverse the trial court if it fails to make a necessary factual determination and if its decision is based upon a faulty

---

**4** Sternberg has not challenged two of the grounds for discipline on appeal, so the Board argues Sternberg's discipline would remain valid regardless of the outcome of this appeal. Because we find the other four grounds for discipline were valid, we need not address this issue.

7

conclusion of law." (*Tellis v. Contractors' State License Bd.* (2000) 79 Cal.App.4th 153, 158.)

## 2. *Interpretation of Section 4081*

As the pharmacist-in-charge, Sternberg was "responsible for a pharmacy's compliance with all state and federal laws and regulations pertaining to the practice of pharmacy." (§ 4113, subd. (c); see § 4036.5 [defining pharmacist-in-charge as "the supervisor or manager responsible for ensuring the pharmacy's compliance with all state and federal laws and regulations pertaining to the practice of pharmacy"].) That includes section 4081, which states: "(a) All records of manufacture and of sale, acquisition, receipt, shipment, or disposition of dangerous drugs or dangerous devices shall be at all times during business hours open to inspection by authorized officers of the law, and shall be preserved for at least three years from the date of making. A current inventory shall be kept by every manufacturer, wholesaler, third-party logistics provider, pharmacy, veterinary food-animal drug retailer, physician, dentist, podiatrist, veterinarian, laboratory, clinic, hospital, institution, or establishment holding a currently valid and unrevoked certificate, license, permit, registration, or exemption under Division 2 (commencing with Section 1200) of the Health and Safety Code or under Part 4 (commencing with Section 16000) of Division 9 of the Welfare and Institutions Code who maintains a stock of dangerous drugs or dangerous devices. [¶] (b) The owner, officer, and partner of a pharmacy, wholesaler, third-party logistics provider, or veterinary food-animal drug retailer shall be jointly responsible, with the pharmacist-in-charge, responsible manager, or designated representative-in-charge, for maintaining the records and inventory described in this section. [¶] (c) The pharmacist-in-charge, responsible manager, or designated representative-in-charge shall not be criminally responsible for acts of the owner, officer, partner, or employee that violate this section and of which the pharmacist-in-charge, responsible manager, or designated representative-in-charge had no knowledge, or in which he or she did not knowingly participate."

Sternberg argues the Board improperly upheld the first and second causes for discipline by too broadly interpreting section 4081 to support discipline even when the pharmacist-in-charge was unaware of the improper conduct leading to the inaccurate and incomplete inventory records. To assess his claim, we apply familiar principles of statutory construction: "'[O]ur goal is "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law."' [Citation.] First, we must look to the words of the statute, which generally provide the most reliable indicator of legislative intent. [Citation.] If the statutory language is unambiguous, then we presume the Legislature meant what it said and our inquiry ends. [Citation.] We give words in a statute their plain and commonsense meaning, and we avoid a construction that would produce absurd results, which we presume the Legislature did not intend. [Citation.] We also 'do not construe statutes in isolation; rather, we construe every statute with reference to the whole system of law of which it is a part, so that all may be harmonized and anomalies avoided.'" (*Barker v. Garza* (2013) 218 Cal.App.4th 1449, 1454.) As the agency charged with administering and enforcing the pharmacy statutes (§ 4001, subd. (a)), the Board's interpretation of section 4081 is entitled to deference unless it is clearly erroneous. (*San Mateo City School Dist. v. Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 856.)

The Board properly interpreted section 4081 not to require knowledge in order to impose licensing discipline. The language of subdivisions (a) and (b) of section 4081 contains no express knowledge requirement, and language may not be inserted into a statute that the Legislature has omitted. (*Conrad v. Medical Bd. of California* (1996) 48 Cal.App.4th 1038, 1046; *Khan v. Medical Board* (1993) 12 Cal.App.4th 1834, 1845 (*Khan*) ["The Legislature's failure to include 'knowingly' or 'intentionally' or other qualifying words signals that it did not intend either guilty knowledge or intent to be elements of" the licensing statute at issue.].) This is particularly true in light of section 4081, subdivision (c), which provides that a pharmacist-in-charge may not be *criminally* liable for an employee's violation of section 4081 if he or she did not know the violation occurred. (See *Telish v. California State Personnel Bd.* (2015) 234 Cal.App.4th 1479,

9

1490 [applying the maxim *expressio unius est exclusio alterius,* meaning """"the expression of certain things in a statute necessarily involves exclusion of other things not expressed""""]; *Khan, supra*, at pp. 1844-1845 [refusing to imply knowledge requirement into medical licensing statute given other statutes in same article contained express knowledge requirement].)[5]

The Board's interpretation also supports the purpose of protecting the public by encouraging pharmacists-in-charge to take necessary precautions to adequately supervise and maintain the inventory of dangerous drugs. (§ 4001.1 ["Protection of the public shall be the highest priority for the California State Board of Pharmacy in exercising its licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."]; see *Khan, supra*, 12 Cal.App.4th at p. 1845 [refusing to imply knowledge requirement in medical licensing statute, which served the purpose of protecting the public].) And imposing strict liability is consistent with other cases imposing strict liability under other licensing statutes. (See *Margarito v. State Athletic Com.* (2010) 189 Cal.App.4th 159, 168-169 [collecting cases]; see also *Brodsky v. Cal. State Bd. of Pharmacy* (1959) 173 Cal.App.2d 680, 682, 691 (*Brodsky*) [refusing to imply knowledge requirement in now-repealed pharmacy statute that provided that "any person who permits the compounding of prescriptions or the selling of drugs in his pharmacy except by a registered pharmacist is guilty of a misdemeanor"].)

---

[5]     For the first time in his reply brief, Sternberg contends section 4081, subdivision (c) is not relevant in light of section 4332, which states, "Any person who fails, neglects, or refuses to maintain the records required by Section 4081 or who, when called upon by an authorized officer or a member of the board, fails, neglects, or refuses to produce or provide the records within a reasonable time, or who willfully produces or furnishes records that are false, is guilty of a misdemeanor." But sections 4081, subdivision (c) and section 4332 address two different issues: section 4332 creates misdemeanor liability for direct violations of section 4081, whereas section 4081, subdivision (c) limits vicarious criminal liability of a pharmacist-in-charge unless he or she knows of the violation by an employee or others.

10

Sternberg analogizes licensing discipline to criminal liability to argue a knowledge requirement is necessary, but licensing discipline is civil in nature, not criminal, designed to "protect the public from incompetent practitioners by eliminating those individuals from the roster of state-licensed professionals." (*Fahmy v. Medical Bd. of California* (1995) 38 Cal.App.4th 810, 817; see *Brodsky, supra*, 173 Cal.App.2d at p. 688.) The Legislature drew that very distinction in section 4081 when it imposed a knowledge requirement for vicarious criminal violations but not violations leading to licensing discipline, and we are not authorized to rewrite the statute to add an element the Legislature omitted.

Sternberg also argues this interpretation of section 4081 is unreasonable because "a pharmacist-in-charge would violate this statute even if a pharmacy was burglarized overnight, an indeterminate amount of dangerous drugs were taken, and it could not account for all dangerous drugs the next day." The simple response is that Hurtado did not burglarize the Target pharmacy overnight, but took advantage of Sternberg's inadequate inventory procedures to steal a massive quantity of Norco over an 18-month period. But even if a pharmacy is burglarized as in Sternberg's hypothetical, section 4081 requires the pharmacist-in-charge to maintain an inventory of dangerous drugs, so if he or she is unable to account for what was stolen, it would not be unreasonable to subject him or her to licensing discipline.

Finally, Sternberg argues for the first time in his reply brief that the issue is not whether section 4081 contains a knowledge requirement, but whether he could have violated section 4081 at all if he had no way to know his inventory was inaccurate. There are several problems with this argument. First, it simply begs the question of whether section 4081 contains a knowledge requirement. Second, as we discuss below, there was substantial evidence that Sternberg's policy and procedural failures allowed Hurtado to steal the Norco, so it is not accurate to say he had no way to know her theft was possible and his inventory was inaccurate. Third, his interpretation of what constitutes a violation of section 4081, subdivision (a) is incorrect. The term "current inventory" in section 4081 is defined to "include complete accountability for all dangerous drugs handled by

11

every licensee enumerated in Sections 4081 and 4332." (Cal. Code Regs., tit. 16, § 1718.) The phrase "handled by every licensee" could certainly encompass Hurtado secretly ordering and receiving the Norco at the pharmacy under Sternberg's supervision, even if she concealed her actions. Thus, the Board properly interpreted section 4081 to hold Sternberg strictly liable for violations leading to licensing discipline.

### 3. *Sufficiency of the Evidence*

Sternberg argues two points with regard to the evidence: first, insufficient evidence supported the fifth cause for discipline for his failure to maintain the pharmacy's physical facilities in violation of California Code of Regulations, title 16, section 1714, subdivision (b); and second, no evidence supported the sixth cause for discipline for his failure to secure the prescription department in violation of California Code of Regulations, title 16, section 1714, subdivision (d), because there was no evidence he was required to supervise the unpacking of drug deliveries or conduct random invoice audits.[6] Although the Board's decision contained errors, we find sufficient evidence supported its findings.

As relevant to the fifth cause for discipline, California Code of Regulations, title 16, section 1714, subdivision (b) states, "Each pharmacy licensed by the board shall maintain its facilities, space, fixtures, and equipment so that drugs are safely and properly prepared, maintained, secured and distributed. The pharmacy shall be of sufficient size and unobstructed area to accommodate the safe practice of pharmacy." The Board found Sternberg violated this provision because he "was responsible for ensuring that the pharmacy maintained and secured its drugs from diversion and theft," and the evidence showed he "failed to secure the drugs that were being delivered to the pharmacy. There was no evidence that the pharmacy's facility, space, fixtures, or equipment were maintained in any way to prevent the thefts in this case, such as the use of locked cabinets or drawers for Schedule II or III drugs."

---

[6] The Board argues we may not review Sternberg's evidentiary challenges because he did not provide the administrative record on appeal. We have obtained and reviewed the administrative record, however, so the Board's contention is moot.

12

We agree with Sternberg that the Board's statement that there was no evidence the pharmacy facility was properly maintained incorrectly suggested Sternberg bore the burden of proof, when the burden was on the Board to prove a lack of maintenance by clear and convincing evidence. (*Ettinger v. Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 856.) Nor was there any evidence that the physical measures suggested by the Board, such as locked cabinets or drawers, would have done anything to prevent Hurtado's theft. She created a scheme by which the Norco she ordered would have never made its way into a locked cabinet or drawer—she intercepted it when it was delivered, hid it in the store room, and then took it to her car when she was unsupervised. Sternberg's policy and procedural failures, such as his lack of control over deliveries and invoices, did not show he failed to maintain the pharmacy's "facilities, space, fixtures, and equipment" to prevent the theft.

But we interpret licensing statutes broadly (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 786), and we think the terms "facilities" and "equipment" could be reasonably read to include the pharmacy's phone ordering system. As the Board found, anyone with the passcode could place orders for drugs over the phone, and Sternberg gave Hurtado unrestricted access to that code, which she used to place orders from her home and which Sternberg failed to audit. Had Sternberg restricted access to the passcode or put in place measures to ensure employees placed orders only through the pharmacy's phone system, he could have averted Hurtado's theft. This evidence sufficiently supported the Board's conclusion that Sternberg violated California Code of Regulations, title 16, section 1714, subdivision (b).

As for the sixth ground for discipline, California Code of Regulations, title 16, section 1714, subdivision (d) states, "Each pharmacist while on duty shall be responsible for the security of the prescription department, including provisions for effective control against theft or diversion of dangerous drugs and devices, and records for such drugs and devices. Possession of a key to the pharmacy where dangerous drugs and controlled substances are stored shall be restricted to a pharmacist." The Board found Sternberg implemented no controls to prevent theft based on the lax oversight of the phone ordering

13

system, the failures in accepting deliveries and handling invoices, the lack of supervision when the pharmacist was on break, and the failure to conduct random checks of deliveries and invoices.

Sternberg contends no evidence supported the Board's finding that Hurtado's theft was due to his failure to randomly check invoices or lock up dangerous drugs. As noted above, we agree there was no evidence locking up dangerous drugs would have averted Hurtado's theft, but we disagree there was no evidence Sternberg could have implemented other procedures to avert the theft. As the Board found, had Sternberg conducted random checks of the containers he and his staff were signing for, he could have uncovered the theft sooner, and his failure to do so "allowed Hurtado the opportunity to destroy any paper evidence that might have alerted [Sternberg] to her thefts." Also, had he exercised any sort of review or oversight of the delivery invoices, Hurtado would have been unable to simply destroy them to cover up her Norco orders. Hurtado was also permitted to sign for three Norco deliveries in violation of the law and of a policy that only pharmacists could sign for deliveries. Sternberg offered no evidence of how that policy was implemented.

Sternberg also contends there was no evidence he had the duties to "perform some random audits of drug deliveries that he signed for, conduct checks of his staff's work, and actively participate in checking inventory as well as the drugs delivered to the pharmacy." He faults the Board for rejecting his expert's testimony "that it is not the custom and practice, nor the standard of care in the community, for a pharmacist to watch the technician open a drug delivery tote and label the bottles and that the pharmacist is ordinarily occupied with either checking the prescriptions filled by other personnel, or consulting with clients about their medications . . . ." But the Board believed that opinion was "neither an accurate nor complete assessment of what is required under the law," and instead accepted the testimony of its own competing witness that the pharmacist-in-charge was required to "oversee[] the daily operations of the pharmacy and [be] the 'person responsible for their compliance with pharmacy law.'" The Board was entitled to reject the testimony from Sternberg's expert because "[a] community custom is merely

14

evidence of the standard of care," which the Board could find had little impact on whether Sternberg violated a duty "aris[ing] from the laws which [he] was found to have violated." (*Banks v. Board of Pharmacy* (1984) 161 Cal.App.3d 708, 713.) Hurtado's extensive and prolonged theft was itself substantial evidence that Sternberg failed to properly oversee the operations of the pharmacy and the Board could have concluded that theft would have been averted if he supervised and randomly audited drug deliveries, conducted checks of his staff's work, and actively participated in the inventory and delivery process.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

OHTA, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 8/26/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANDREW M. STERNBERG, | B255862 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS138984) |
| v. | |
| CALIFORNIA STATE BOARD OF PHARMACY, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | NO CHANGE IN JUDGMENT |

THE COURT:\*

  The opinion in the above-entitled matter filed on August 6, 2015, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

\*  BIGELOW, P. J.     FLIER, J.     OHTA, J.\*\*

\*\*  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.